# SENTENCING MEMORANDUM ON BEHALF OF LATTINE CLARK

Docket No. 17 Cr. 292 (VSB)

Honorable Vernon S. Broderick

Sentence Date: April 18, 2019

Filed: April 9, 2019

## **LIST OF EXHIBITS**

**Letter from Ingrid Graham** ………………………………………………….. **Exhibit A**

**Letter from Natasha Brown** …………………………………………………...... **Exhibit B**

**Letter from Nickey Commrie** ………………………………………………… **Exhibit C**

**Letter from Keenaja Livingston** …………………………………………………**Exhibit D**

**Letter from Shainn Hutchinson** ………………………………………………… **Exhibit E**

I.      **INTRODUCTION**

This memorandum and attached exhibits are respectfully submitted for the Court's consideration prior to imposing sentence on Lattine Clark. Mr. Clark is before this Court to be sentenced upon his conviction, after a plea of guilty pursuant to a plea agreement, of one (1) count of 18 U.S.C. § 924(c) and 18 U.S.C. § 924(c)(1)(A)(ii): use of firearms during and in relation to a drug trafficking crime.

Through this pre-sentence submission, we respectfully request that this Court exercise the greatest possible degree of mercy and leniency in sentencing Mr. Clark. We have structured a sentencing option for Your Honor's consideration, which we believe is in keeping with the needs of justice and addresses the individualized factors in the instant case. We respectfully request that this Court exercise its discretion to sentence Mr. Clark to a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

We hope that this information and accompanying letters serve to articulate the history and character of the man who will stand before you for sentencing on April 18th, 2019.

II.     **PRESENTENCE REPORT AND ADVISORY GUIDELINE CALCULATION**

The Pre-Sentence Report ("PSR") accurately states that on September 14, 2018, Mr. Clark pled guilty to Count Two of the above-referenced Indictment. Count Two charged Mr. Clark with using, carrying, possession, and brandishing a firearm during and in relation to a drug trafficking crime, in violation of count of 18 U.S.C. § 924(c) and 18 U.S.C. § 924(c)(1)(A)(ii). PSR ¶ 8. The parties stipulated that the November 1, 2016 edition of the Sentencing Guidelines Manual applies; and that pursuant to 2K2.4(b), the Guidelines sentence for Count 2 is the minimum term of imprisonment required by statute; and that Chapters Three and Four of the Guidelines do not apply to that count of conviction. PSR ¶ 9. See also USSG §§ 2K2.4,

[1]

2K2.4(b).  The mandatory minimum sentence for a conviction of 18 U.S.C. § 924(c)(1)(A)(ii) is 84 months. 18 U.S.C. § 924(c)(1)(A)(ii).

The PSR calculates Mr. Clark's total Guideline sentence as 84 months and his Criminal History Category ("CHC") to be Level III. The CHC level is based upon a subtotal criminal history score of three. Mr. Clark's subtotal criminal history score consists of a third degree menacing charge, for which he was not prosecuted but referred to Family Court at age 15, on 7/30/2012; a first degree robbery conviction, for which he was arrested on 4/24/2012, at age 15, and sentenced to 5 years' probation; and a marijuana possession that resulted in a $25 fine, paid in full on 3/20/2016.  PSR ¶ 37. Two points were added to Mr. Clark's criminal history because he committed the instant offense while under probation, pursuant to USSG § 4A1.1(d). PSR ¶ 38. The total of five points places Mr. Clark in criminal history category III. USSG § 5A. PSR ¶ 38.

However, as the plea agreement did not contemplate the Family Court juvenile delinquency adjudication, Mr. Clark's agreement with the government sets his Criminal History Category at II.

### III.      PERSONAL HISTORY OF LATTINE CLARK

Mr. Clark's early life was colored by violence to his direct family members, instability, relocation, and an untreated drug dependency.  Despite these challenges, Mr. Clark has a close-knit relationship to his immediate family, a number of whom have written the attached letters and/or spoken directly with Probation.

Mr. Clark's parents separated when he was very young. Initially, he was raised by his mother, Natasha Brown, and her partner, Ian Hutchinson. In 2004, when he was about seven years old, Mr. Clark's father was shot and killed in the street. PSR ¶ 45. Mr. Clark's mother

subsequently moved to Jamaica, her country of origin. She left Mr. Clark and his sister Shainn in the care of his aunt, Nicky Commrie, and his grandmother, Cherlia Lewis. In 2008, tragedy again struck when Mr. Clark's grandmother, at that point just 50 years old, died of a heart attack on Thanksgiving. In October of 2009, an order of custody was issued by the Bronx Family Court placing Mr. Clark in the custody of Ms. Commrie. PSR ¶ 51. Mr. Clark was born in Jamaica, however, and was never naturalized, due to his aunt's mistaken belief that her citizenship was conferred on him due to the custody order.

Mr. Clark developed a bond during his childhood with his maternal uncle, Howard Washington, who lived in the Bronx. PSR ¶ 53. Mr. Washington expressed to Probation that Mr. Clark was the only boy in his family, and was essentially without an immediate male role model as he grew up. In "approximately 2010 or 2011," (while Mr. Clark was 13-14 years old), Mr. Washington relocated to Connecticut. PSR ¶ 54. At that time, Mr. Washington notes that Mr. Clark began to get into trouble; although Mr. Washington kept in contact with Mr. Clark, he continued to "follow the wrong company." PSR ¶ 54. Mr. Washington shared his belief that had he remained in the Bronx he might have been able to help Mr. Clark avoid his current legal trouble. PSR ¶ 54. Mr. Washington informed Probation that "Clark is welcome to reside with him upon release, and he will have a job waiting for him when he is released to the community." PSR ¶ 55.

Mr. Clark smoked marijuana for the first time at age 10, and smoked daily after age 15. PSR ¶ 62. At 18, he began using "lean" and Percocet, which "almost immediately" blossomed into a daily, "$200 per day" habit. PSR ¶ 63. Mr. Clark reported enduring "three or four days" of withdrawal upon his incarceration. PSR ¶ 64. He is currently attending a drug program. PSR ¶ 64.

Mr. Clark's academic record reflects the conditions of his childhood. He did not graduate from high school. (However, he is currently pursuing his GED.). While in 10th grade at Hyde Leadership Academy High School, Mr. Clark got into trouble for fighting with other students. PSR ¶ 68. He subsequently transferred to Bronx Community College Preparatory High School. Probation notes that Clark "reportedly enrolled in 12th grade at this school, but, in fact, never attended classes during the 12th grade." PSR ¶ 67.

### *Prior law enforcement contacts*

Mr. Clark's first contacts with the criminal justice system also occurred during this time. In the spring of 2012, Mr. Clark (at the time 15) and three others approached Carlos Rodriguez and a friend on the corner in the Bronx. The children all knew each other from school. Mr. Clark's companion demanded that Rodriguez "give me what you have;" Rodriguez told them he had nothing. PSR ¶ 34. Mr. Clark then robbed Rodriguez with the help of his companions, and threatened Rodriguez not to report the incident by showing him a knife he had secured under his shirt. PSR ¶ 34. The next school day, Rodriguez reported the incident to the school safety officer and identified Mr. Clark and his companions. The police subsequently arrested Mr. Clark at school, and he was referred to Family Court, where he was adjudicated a juvenile delinquent. PSR ¶ 34. Mr. Clark admitted to his conduct; Rodriguez reported that, although his property was never recovered, he had not been injured. PSR ¶ 34. Mr. Clark was ultimately sentenced to five years of probation as a Youthful Offender. PSR ¶ 34.

At age 19, in March 2016, Mr. Clark was arrested after being observed smoking marijuana in his neighborhood. PSR ¶ 35. The matter was resolved by his eventual payment of a $25 fine. PSR ¶ 35.

In July 2016, Mr. Clark was arrested after a woman called 911 and reported he had slapped her in the face. PSR ¶ 36. According to the victim, she maced him in the face, and Clark responded by brandishing a firearm. PSR ¶ 36. Mr. Clark was sentenced to a 1-year conditional discharge for disorderly conduct; the police did not recover the alleged firearm. PSR ¶ 36.

### *The offense conduct*

Mr. Clark has pleaded guilty to using, carrying, and possessing a firearm, in connection with drug trafficking in Hunts Point. PSR ¶ 2,3. Specifically, on October 16, 2016, Mr. Clark brandished a gun in the vicinity of Coster Street and Spofford Avenue in connection with an ongoing dispute following a theft of drugs from him. PSR ¶ 25. During the October incident, Mr. Clark was shot. PSR ¶ 25. Probation also reports that Mr. Clark allegedly previously used the gun to hit another individual and fired at other individuals, but did not hit anyone. PSR ¶ 25. Mr. Clark does not admit to this alleged conduct.

There is no dispute that Mr. Clark sold drugs in Hunts Point, though this is not the crime of conviction.

### IV. SENTENCING CONSIDERATIONS UNDER 18 U.S.C § 3553(a)

Taking into account the factors enumerated in 18 U.S.C. § 3553(a), we respectfully suggest that a sentence of 84 months is appropriate in this case. As this Court knows, the statute instructs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" as outlined below. We respectfully suggest that the balance of all these factors weigh in favor of a Guidelines sentence, which would meet the sentencing goals of punishment and deterrence.

*Nature of the Offense and the History and Characteristics of the Defendant*

Mr. Clark's age is also relevant in considering his sentence. We ask the Court to consider Mr. Clark's youth in crafting an appropriate sentence, both for the fact that he was (and is) so young, and because of the horrific things he went through during the course of his childhood. In a 2005 report for the Office of Juvenile and Delinquency Prevention of the United States Department of Justice, the Department recognized that "the parts of the brain that govern impulse, judgment, and other characteristics may not reach complete maturity until an individual reaches age 21 or 22." At the time he participated in the charged crimes, Mr. Clark was between 18 and just over 20 years old. As recognized by the Department of Justice, the character and mental processes of even young adults is incomplete. Indeed, Mr. Clark's crime shows a gross failure to weigh his actions and an impetuous failure to seek a better solution; both traits commonly associated with youth and immaturity.

There was a time, of course, when District Courts were limited in their ability to rely upon circumstances such as age in fashioning an appropriate sentence. That, however, is no longer the case, and sentencing courts are now required to consider such factors:

Other than the Policy Statement at §5H1.1, the Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition, employment history, lack of guidance as a youth, family ties, or military, civic, charitable or public service are not ordinarily considered under the Guidelines. See United States Sentencing Commission, Guidelines Manual §§ 5H1.16, 11, and 12 (Nov. 2006) n3. These are, however, matters that § 3553(a)(1) authorizes the sentencing judge to consider. See e.g., 18 U.S.C. 3553(a)(1).

[6]

*Rita v. United States*, 551 U.S. 338, 364-65 (2007) (Stevens, J. concurring).  See also *United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have no held that district courts have broad discretion to consider individual characteristics like age, employment and criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation.").

     Mr. Clark will also likely be deported to Jamaica upon completion of his sentence, a country of which he has no significant knowledge or experience, having been brought to the U.S. at a very young age.

     Nothing herein suggests that the crime which has brought Mr. Clark before this Court is not serious, nor do we intend to downplay that seriousness. We ask only that it be viewed in context. The circumstances of the offense and the history and characteristics of Mr. Clark justifies a sentence well below the Guidelines and is congruent with the statutory mandate to "impose a sentence sufficient, but not greater than necessary," while satisfying the goals of sentencing and the enumerated purposes set forth in the statute.

*The Need for Deterrence*

     To the extent that criminal sanctions do have a general deterrent effect, the certainty and swiftness of punishment have a far greater deterrent effect than the severity of the sanction. A below-Guidelines sentence would be more than sufficient to deter other would-be offenders from similar criminal conduct.  As a preliminary matter, this is not a high-profile case that promotes Mr. Clark as someone who profited from his criminal conduct.  Rather, Mr. Clark's story makes clear the negative consequences of attempting to engage in criminal conduct.

## V. SENTENCING RECOMMENDATION

As noted above, we respectfully request a sentence of 84 months. This will provide for appropriate punishment while allowing Mr. Clark the chance to grow as an individual, remain close to his support network of family members, and provide him with the tools to become a successful and contributive member of society.

## VI. CONCLUSION

As detailed above, we believe that in this particular case, our sentencing recommendation would provide an adequately onerous sentence that is harmonious with the needs of justice: a sentence sufficient, but not greater than necessary.

Respectfully submitted,

BRILL LEGAL GROUP, P.C.

By: Peter E. Brill (PB0818)
306 Fifth Avenue
Penthouse
New York, NY 10001
(212) 233-4141